**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**August 30, 2017**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[*]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE SANDIA RESORTS, INC., <br><br> Debtor. | BAP No. NM-17-003 |
| HARMINDER SIAN, <br><br> Appellant, <br><br> v. <br><br> PHILLIP J. MONTOYA, Chapter 7 Trustee, NCG, LLC, and STATE OF NEW MEXICO, TAXATION AND REVENUE DEPARTMENT, <br><br> Appellees. | Bankr. No. 15-11532 <br> Chapter 7 <br><br> OPINION[**] |

Appeal from the United States Bankruptcy Court
for the District of New Mexico

Before **KARLIN**, Chief Judge, **NUGENT** and **MOSIER**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

The Debtor, Sandia Resorts, Inc., owned America's Best Value Inn in Albuquerque, New Mexico. Appellant Harminder Sian is the president and sole shareholder of the Debtor. He appeals the bankruptcy court's order authorizing

---

[*]    This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[**]    After examining the briefs and appellate record, Appellant has withdrawn his request for oral argument and the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr. P. 8019(g).

the sale of the hotel. Because he failed to obtain a stay of the bankruptcy court's order pending this appeal and the sale subsequently closed, we must evaluate the threshold issue whether the appeal is moot. Our review of the entire record demonstrates that the appeal is moot, and we thus must dismiss it.

## I. BACKGROUND

In 2004, Appellant signed a promissory note on behalf of the Debtor in the amount of $1,950,000 in favor of First National Bank of Santa Fe. A mortgage on the hotel, an assignment of rents, and a security interest in the hotel's furnishings all secured the note. After the Debtor defaulted on the note, the bank filed a foreclosure action in June 2011. To halt the foreclosure, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.[1] The Debtor's plan of reorganization was confirmed, but the Debtor subsequently defaulted on its plan payments to the bank. The bank then reopened the foreclosure and obtained an order appointing a receiver.

Meanwhile, the bank sold the note to NCG, LLC in January 2015 but failed to disclose that sale to the Debtor or to the state court. Six months later, the Debtor filed a second Chapter 11 case in attempt to thwart the receiver's collection of the hotel's income. The bank moved to dismiss the second Chapter 11 on the basis that the Debtor was simply trying to modify its previously confirmed plan. The bankruptcy court granted that motion, finding the second case was an "impermissible attempt to circumvent the prohibition against post-substantial consummation modifications."[2] But upon being advised by the Debtor, in a motion for reconsideration, that the bank had no standing to pursue dismissal because it no longer owned the note, the bankruptcy court reopened the

---

[1] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[2] *Memorandum Opinion* at 18, *in* Appellant's App. at 84.

Debtor's second bankruptcy case and set aside the dismissal order.[3] When the Debtor was unable to confirm another plan, the bankruptcy court converted the case to one under Chapter 7.

The bankruptcy court appointed Philip Montoya as the Chapter 7 Trustee. The Trustee and NCG almost immediately entered into a contract for NCG to purchase the hotel, resulting in the filing of the *Chapter 7 Trustee's Motion to Sell Estate Assets Free and Clear of All Liens Pursuant to 11 U.S.C. § 363(f)*.[3] The motion indicated NCG had offered to purchase the hotel, as well as its furniture and other goods located at the hotel, for a cash payment of $550,000 and forgiveness of the balance of the note owed by the Debtor (essentially a credit bid based on its $2 million loan).[4]

Appellant objected to the sale, but only made one argument in opposing the sale: that NCG had no lien with which to make a credit bid because the bank's assignment of the note and associated mortgage to it was void. He based this argument on his reading of New Mexico Statute § 47-1-7, arguing that the bank had failed to record "any power of attorney or other writings containing authority" for the bank's officer to convey the note to NCG.[5] From this point, Appellant argued the bankruptcy court should not approve the sale, since effectively it was only for $550,000 cash compared to the $1.2 million appraised

---

[3] For reasons not explained in the record before this Court, the bank and its counsel continued to pursue relief in bankruptcy court in the bank's own name despite assigning the note to NCG. NCG filed a proof of claim just prior to the hearing on the bank's motion to dismiss, and Appellant apparently learned of this assignment only after that motion to dismiss was granted.

[3] Appellee's App. at 385.

[4] Proofs of claim filed by NCG show varying amounts due, but all reflect a balance, with interest, exceeding $2 million on an original note of $1.95 million at 6.25% interest. *Claims Register* at 2-3, *in* Appellant's App. at 293-94; *Proof of Claim 9-1*, *in* Appellant's App. at 303.

[5] *Objection to Chapter 7 Trustee's Motion to Sell Assets to NCG, LLC*, at 2, in Appellee's App. at 414.

value for these assets.

The bankruptcy court conducted a hearing on the sale motion and several days later entered the *Order Granting Chapter 7 Trustee's Motion to Sell Estate Assets Free and Clear of All Liens Pursuant to 11 U.S.C. § 363(f)*.[6] In its written decision, the bankruptcy court concluded NCG's offer was "fair, reasonable, and beneficial to creditors and the estate" and found it unlikely the Trustee would receive a better offer.[7] The bankruptcy court also found the sale "was negotiated at arm's length . . . . [and n]o party involved ha[d] an improper or bad motive," and that the "Trustee properly exercised his business judgment in negotiating the sale."[8]

The bankruptcy court overruled Appellant's specific objection concerning NCG's ability to credit bid. It concluded New Mexico Statute § 47-1-7 did not require the bank to have a separate power of attorney specifying the officer's authority to execute the assignment, and thus, the assignment was valid. Accordingly, the bankruptcy court approved the sale, free and clear of all liens, finding that NCG's offer to purchase the assets for $550,000, coupled with forgiveness of NCG's remaining debt, was worth $2.5 million, far exceeding the value of those assets.

Appellant timely appealed the sale order and also requested a stay pending appeal (which the bankruptcy court denied). Appellant did not then seek a stay from this Court. The sale closed January 19, 2017, and the Trustee's Report of Sale reflects payment from the sale proceeds of $316,445 to various taxing

---

[6]     Appellant's App. at 235.

[7]     Order Approving Sale at 5, in Appellant's App. at 239.

[8]     *Id.*, *in* Appellant's App. at 239.

-4-

authorities, and transfer of title to the hotel to NCG.[9]

## II.    JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[10] Appellant appeals an order granting a motion to sell real property free and clear of all liens pursuant to § 363(b) and (f), which is a final order.[11] None of the parties elected to have this appeal heard by the United States District Court for the District of New Mexico.

A bankruptcy court's interpretation of the Code is a conclusion of law, reviewed *de novo*.[12] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[13] The bankruptcy court's decision on a motion to sell pursuant to § 363(b) is reviewed

---

[9]    Appellee's App. at 430. Early in the appeal, this Court entered an Order to Show Cause why Appeal Should not be Dismissed as Moot pursuant to § 363(m), but ultimately decided to defer ruling on mootness until we could review the entire record on appeal. We deferred because Appellant had boldly asserted in his response that NCG was not a good faith purchaser. *See* BAP ECF No. 17. But the only reference he now makes on appeal regarding the good faith purchaser issue has nothing at all to do with the actual sale. Instead, the acts he points to relate to the bank's representations that it was a party in interest even after it had transferred the note to NCG. He never suggests NCG is not the holder of the note. Further, the good faith purchaser question involves whether the sale of the hotel was in good faith, not whether NCG or the bank acted in bad faith in front of the state or bankruptcy court in failing to reveal the assignment two years earlier.

[10]    28 U.S.C. § 158(a)(1), (b)(1), & (c)(1); Rule 8005; 10th Cir. BAP L.R. 8005-1.

[11]    *In re Lotspeich*, 328 B.R. 209, 216 (10th Cir. BAP 2005).

[12]    *Foust v. McNeill (In re Foust)*, 310 F.3d 849, 853 (5th Cir. 2002) (stating application of § 543 reviewed de novo); *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 668 (10th Cir. BAP 2012).

[13]    *Houlik*, 481 B.R. at 668-69 (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

for abuse of discretion,[14] while the bankruptcy court's underlying factual findings are reviewed for clear error.[15] Findings of good faith under § 363(m) are also reviewed for clear error.[16] The clearly erroneous standard requires a "definite and firm conviction that a mistake has been committed."[17] The bankruptcy court's determinations regarding state law are reviewed *de novo*.[18]

## III. DISCUSSION

The Trustee and NCG argue this appeal is statutorily moot pursuant to § 363(m) because Appellant failed to obtain a stay pending appeal and the sale to NCG closed in January 2017. Section 363(m) provides the "reversal or modification on appeal of . . . a sale or lease of property does not affect the validity of a sale or lease . . . to an entity that purchased or leased such property in good faith . . . ."[19] Thus, § 363(m) moots an appeal "where a party appealing from an order authorizing the sale of a debtor's property fails to obtain a stay of the order and the property is subsequently sold to a 'good faith purchaser.'"[20] However, an appeal is not mooted solely by § 363(m) if any other applicable law

---

[14]    *In re Buerge*, Nos. KS-12-074, KS-12-077, KS-12-078, KS-13-022-025, 2014 WL 1309694, at *9 (10th Cir. BAP Apr. 2, 2014) (citing *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 656 (9th Cir. BAP 1996) ("bankruptcy court has discretion when ruling on a § 363(b) motion")).

[15]    *In re Adkins*, 42 F. App'x 252, 254 (10th Cir. 2002) (quoting *Osborn v. Durant Bank & Tr. Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994)).

[16]    *In re Lotspeich*, No. WO-08-016, 2008 WL 1989758 at *3 (10th Cir. BAP May 7, 2008) ("we review . . . determination of good faith under § 363(m) for clear error.") (citing *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)).

[17]    *Easley v. Cromartie*, 532 U.S. 234, 243 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[18]    *Salve Regina Coll.*, 499 U.S. at 231 (concluding "a court of appeals should review de novo [the trial] court's determination of state law.").

[19]    11 U.S.C. § 363(m).

[20]    *In re BCD Corp.*, 119 F.3d 852, 856 (10th Cir. 1997); *In re Crowder*, 314 B.R. 445, 448-49 (10th Cir. BAP 2004).

would allow a court to fashion equitable relief not affecting the validity of the sale.[21]

At the outset, the Court acknowledges the purpose underlying § 363(m). It is designed to protect the public's interest in finalizing bankruptcy sales, it encourages buyers to purchase estate property knowing an appeal—the results of which might not be known for years—won't later divest it of title, it ensures that adequate sources of financing remain available for other actions the estate needs to pursue, and it ultimately prevents injury to creditors.[22]

Since the Appellant did not obtain a stay, this Court must decide if NCG qualifies as a good faith purchaser under § 363(m). "[T]o obtain good faith status under § 363(m), a purchaser must (i) buy the property without 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders' and (ii) pay 'at least 75% of the appraised value of the assets.'"[23]

As a preliminary matter, Appellant's written objection to the sale never challenged NCG's good faith purchaser status. And we are unable to determine if Appellant made an oral objection on this basis at the hearing on the sale motion because Appellant did not include any part of the transcript of the hearing on the

---

[21] *In re C.W. Mining Co.*, 740 F.3d 548, 555 (10th Cir. 2014) (citing *In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1197 (10th Cir. 1999)); *In re C.W. Mining Co.*, 641 F.3d 1235, 1239 (10th Cir. 2011) ("§ 363(m) forecloses any remedy [ ] that would affect the validity of [a] sale. But it does not preclude a remedy that would not affect the validity of the sale.").

[22] *C.W. Mining*, 641 F.3d at 1238-39 (quoting *Osborn v. Durant Bank & Tr. Co (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994) *abrogated in part on other grounds by Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)).

[23] *Crowder*, 314 B.R. at 450 (quoting *In re Bell Air Assocs., Ltd.*, 706 F.2d 301, 305 n.11-12 (10th Cir. 1983)).

sale motion.[24] As a result, we cannot determine what arguments he preserved, or what evidence he presented, in support of his objection to the sale. The Tenth Circuit routinely holds "the lack of a required transcript leaves [ ] no alternative but to affirm the affected ruling."[25]

While we are under no obligation to remedy Appellant's failure to provide an adequate record, we have nevertheless considered the findings made in the sale order related to NCG's good faith.[26] Although the bankruptcy court did not make an explicit finding that NCG was a good faith purchaser—presumably because Appellant never challenged its status, when we view the findings in their totality, they nevertheless satisfy the Tenth Circuit's test for establishing good faith pursuant to § 363(m).

First, the bankruptcy court found the sale to be "negotiated at arm's length" and that no party had "an improper or bad motive."[27] As the Tenth Circuit notes, an arm's length transaction is "[a] transaction in good faith in the ordinary course of business by parties with independent interests . . . ."[28] When the "arm's length" and absence of "improper or bad motive" findings are coupled, it is clear the bankruptcy court found no evidence of fraud or collusion.[29]

Additionally, the bankruptcy court found the purchase price to be "fair,"

[24]     *See* 10th Cir. BAP L.R. 8018-1(e) ("The appendix must contain all transcripts necessary for this Court's review.").

[25]     *McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992) (citing *Deines v. Vermeer Mfg. Co.*, 969 F.2d 977, 979 (10th Cir. 1992); *McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991)).

[26]     *In re Tollefsen*, No. NO-07-057, 2008 WL 762487, at *2 (10th Cir. BAP Mar. 11, 2008) (summarily affirming bankruptcy court upon appellant's failure to provide a transcript).

[27]     Order Approving Sale at 5, *in* Appellant's App. at 239.

[28]     *In re United States Med., Inc.*, 531 F.3d 1272, 1277 n.4 (10th Cir. 2008) (quoting *Black's Law Dictionary* 109 (6th ed. 1990)).

[29]     Order Approving Sale at 5, *in* Appellant's App. at 239.

"reasonable," and based on the Trustee's sound judgment.[30] NCG's offer was worth approximately $2.5 million (the amount of NCG's mortgage lien plus $550,000 in cash). Appellant claimed, in his objection to the sale motion, that the property was worth $1.2 million. It was thus no stretch for the bankruptcy court to find the Trustee's decision to sell the property to NCG was fair and reasonable.[31]

Appellant has never argued the bankruptcy court's findings concerning the parties' motives or concerning the good faith of the sale were erroneous, or pointed to evidence presented on this issue at the hearing, other than one line in his briefs stating NCG is "far from being an innocent purchaser of the Hotel."[32] We do not believe this terse comment rises to a level of a preserved objection to NCG's status as a good faith purchaser. In addition, Appellant did not list this as an issue on appeal in his Statement of Issues. Thus, Appellant has waived this issue.

In liberally reviewing the matter due to Appellant's pro se status, however, this Court has looked for that evidence in the record Appellant provided and finds no evidence of fraud or collusion on the part of NCG. Admittedly, because Appellant did not include the transcript of the hearing on the sale motion in the record before this Court, we cannot confirm whether he made a more cogent argument, or presented evidence, to the bankruptcy court on that point. Again, "when the party asserting an issue fails to provide a record sufficient to consider an issue, we may decline to consider it."[33]

---

[30]    *Id.*, *in* Appellant's App. at 239.

[31]    Although also not argued by Appellant, the second part of the good faith purchaser test—that the purchaser pay "at least 75% of the appraised value of the assets"—is also easily met here. *Crowder*, 314 B.R. at 450. In fact, NCG effectively paid over 200% of the appraised value.

[32]    Appellant's Br. 16; Appellant's Reply Br. 21.

[33]    *Colby v. Milholland (In re Milholland)*, No. CO-16-019, 2017 WL 895752,
(continued...)

Finally, to the extent this one line about NCG not being an innocent purchaser relates to the events surrounding the bank's assignment of its note and mortgage to NCG two years before the sale, we note that the bankruptcy court was well aware of those circumstances[34] and found nothing suspicious when presented with the sale motion.

Lacking evidence in the record to contradict the bankruptcy court's findings, the Court has no basis to conclude that NCG was anything but a good faith purchaser. But before we can dismiss this appeal based on statutory mootness, we must be satisfied that Appellant has not offered some permissible theory that would allow the Court to fashion equitable relief not affecting the sale's validity. A careful review of Appellant's filings in this Court demonstrate he has made no attempt to offer such a theory.

Although a trustee who has sought and received permission to sell estate assets under § 363(b) has the burden of demonstrating that the appeal of a sale order is statutorily moot under § 363(m),[35] he can meet that "burden if the appellant[s] fail[s] to offer a permissible theory for relief" that would allow the

---

[33] (...continued)
at *7 (10th Cir. BAP Mar. 7, 2017); 10th Cir. BAP L.R. 8009-3.

[34] Although it does not serve as the basis for the dismissal of the case, we also agree with the argument made by Appellees that Appellant should be estopped from now arguing that NCG is not the owner of the note and holder of the mortgage given that he asserted the opposite position when arguing that the bankruptcy court should set aside the dismissal of the case because the bank had assigned the note and mortgage to NCG. Order Approving Sale at 5, *in* Appellant's App. at 239. *See Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (per curiam) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)) (The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment.").

[35] *In re C.W. Mining Co.*, 740 F.3d 548, 555 (10th Cir. 2014) (citing *In re C.W. Mining Co.*, 641 F.3d 1235, 1239 (10th Cir. 2011)).

Court to fashion equitable relief.[36] An appellant "must at least identify an available remedy that will not affect the sale's validity" to overcome the § 363(m) mootness.[37] Furthermore, a trustee need not "disprove every possible legal remedy imaginable," in demonstrating an appeal is mooted by § 363(m).[38]

Here, Appellant has not even tried to identify a remedy short of setting aside the sale of a hotel that is apparently now being operated by NCG or someone to whom it might have sold the hotel since its purchase in January 2017.[39] He does not explain how NCG, or the taxing authorities who received $316,445 at closing, or the estate, could be protected. As a result, we find that the Trustee has met his burden of showing § 363(m) moots this appeal, and thus this appeal shall be dismissed as moot.

Even were we to reach the merits of this appeal, Appellant's arguments fail. His first three issues assert the bankruptcy court erred by allowing the receiver to operate the Debtor, by failing to order the receiver to return income collected, and by concluding the bankruptcy case without requiring the receiver to return income collected. But none of these issues were either discussed or disposed of in the sale order that is the only subject of this appeal, and no other order entered in the fourteen days prior to the notice of appeal addressed these issues. Therefore, any

---

[36]     *Id.* (citing *In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1197 (10th Cir. 1999)).

[37]     *Id.*; *In re Lane*, Nos. WY-14-053, WY-14-054, 2015 WL 1285976, at *2 (10th Cir. BAP Mar. 20, 2015) ("Because the only relief requested by [appellant] would affect the validity of [a] sale, [appellant's] appeals are moot under § 363(m).").

[38]     *C.W. Mining Co.*, 740 F.3d at 555.

[39]     *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded to pro se pleadings, the court will not construct arguments or theories for the [appellant] in the absence of any discussion of those issues.") (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

appeal of these issues is untimely.[40]

Appellant's fourth issue is the only issue he raised in opposing the sale motion, and is the only legal issue that would be properly before us if the entire appeal had not been statutorily mooted by the express provisions of § 363(m). It deals with whether the bankruptcy court properly interpreted and applied New Mexico Statute § 47-1-7. Appellant contends this statute required the bank to have first recorded a power of attorney to authorize its corporate officer to execute the conveyance documents to NCG.

This Court agrees with the bankruptcy court that as a matter of law, the statute governs situations where one party is seeking to convey property on behalf of a different party, usually the owner, and thus does not apply under these facts.[41] And Appellant has once again failed to provide any record that he presented evidence in support of his flawed legal theory, such as that the bank's corporate bylaws required a power of attorney for its corporate officers to execute documents.

## IV. CONCLUSION

The appeal of an order authorizing a sale pursuant to § 363 is statutorily moot where the completed sale was made to a good faith purchaser and no court

---

[40]     Fed. R. Bankr. P. 8002(a).

[41]     The Court also agrees with the bankruptcy court's further explanation, contained in its order denying a stay: "Here, the bank officer did not act through a power of attorney, but by rights granted under applicable corporate statutes. *See, e.g.*, N.M.S.A. § 53-11-3(E) (corporations have the right to convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property or assets), and 53-11-48 (all officers have the authority to manage the corporation as provided in the bylaws or as determined by resolution of the board of directors). *See also* N.M.S.A. § 53-11-6 (giving the general rule that a corporation cannot act *ultra vires*)." *In re Sandia Resorts, Inc.*, No. 15-11532 t11, 2017 WL 1067749, at *3 (Bankr. D.N.M. Mar. 21, 2017). We also agree that under New Mexico law, "even if the assignment in question were defective (it is not), the general rule in New Mexico and elsewhere is that a mortgage 'follows' the promissory note it secures, so a subsequent holder of a note can enforce a mortgage securing payment even without a formal assignment of the mortgage." *Id.* (citing *In re Sandford*, No. 11-10-14424 TS, 2012 WL 6012785, at *5 (Bankr. D.N.M. Dec. 3, 2012)).

issues an order staying that sale pending appeal. An appellant may overcome a finding of mootness upon showing that some equitable relief that does not affect the validity of the sale can be fashioned. Appellant failed to obtain a stay pending appeal, and he failed to identify any available remedy this Court could fashion that would not affect the sale's validity. He further failed to provide an adequate record on which we could review the bankruptcy court's findings. For all these reasons, this appeal is dismissed as moot pursuant to § 363(m).